**UNITED STATES ex rel. Robert EPPS, a/k/a Robert Kimbrough, Petitioner,**

v.

**Honorable Albert NENNA, as Warden of the Manhattan House of Detention for Men, Respondent.**

**No. 67 Civ. 2229.**

United States District Court
S. D. New York.

July 31, 1967.

Robert Epps, pro se.

Frank S. Hogan, Dist. Atty., New York County, by Robert B. Sperling, Asst. Dist. Atty., New York County, New York City, for respondent.

MANSFIELD, District Judge.

Petitioner, who seeks a writ of habeas corpus to stay his extradition from New York to face trial by the State of New Jersey on an indictment filed there against him in 1961, purports to state two claims of error of Constitutional dimensions.

The first claim is that New Jersey has violated his Sixth Amendment right to a speedy trial by inordinate delay in seeking his extradition from New York, where defendant was imprisoned from 1961 to 1966 pursuant to his conviction of crimes in New York, being released in August 1966. After the Governor of New York, on October 21, 1966, signed the warrant of extradition pursuant to a request from the Governor of New Jersey, petitioner unsuccessfully pursued habeas corpus proceedings in the courts of New York, being denied a stay of extradition pending his attempts to reinstate an appeal.

Petitioner's claim that he was denied a speedy trial cannot form the basis for the issuance of a writ at this stage, for the reason that the claim must be presented to the courts of New Jersey in the first instance, which admittedly has not been done. See Cook v. Kern, 330 F.2d 1003 (5th Cir. 1964) (opinion by Judge Moore of the Second Circuit); United States v. States of New York and Alabama, 229 F.Supp. 696 (S.D.N.Y. 1964) (Feinberg, J.); State ex rel. La Rose v. Granquist, 273 Minn. 231, 140 N.W.2d 700 (1966). The case of Greene v. Michigan Dept. of Corrections, 315

F.2d 546 (6th Cir. 1963), cited by petitioner is inapposite; there the writ for federal habeas corpus was brought in the state to which the petitioner had been extradited.

 Petitioner's other claim is that the State of New York denied him due process by refusing to appoint counsel to represent him upon appeal from the denial of his state petition challenging the order for his extradition. An initial question is whether he has exhausted his state remedies on this claim. Although he has an appeal pending in the New York Court of Appeals, 228 N.E.2d 909, 281 N.Y.S.2d 1016, the refusal of that Court to grant a stay of his extradition pending the determination of that appeal renders the appeal an illusory state remedy, which should not therefore bar federal relief. The facts revealed in the papers before this Court, however, do not demonstrate a denial of due process.

 Petitioner's claim raises several troubling issues. One is whether he has the right to appointed counsel on appeal from a habeas corpus proceeding brought to challenge his confinement pursuant to an order of extradition. The Supreme Court has gone no further in this direction than to hold that the Due Process clause requires that counsel be provided in felony prosecutions, Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and during interrogation of a criminal accused, Miranda v. State of Arizona, 384 U.S. 436, 474, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). However, there has been much debate concerning whether those "civil" actions that involve a deprivation of liberty should also be occasions for appointed counsel. See Note, Right to Counsel in Criminal Post-Conviction Review Proceedings, 51 Cal.L.Rev. 970, 978–985 (1963); The Right to Counsel—A Symposium, 45 Minn.L.Rev. 693, 799–896 (1961); Note, The Right to Counsel in Civil Litigation, 66 Colum.L.Rev. 1322 n. 3 (1966). There has also been discussion of the right to counsel in more conventional civil litigation. See the Columbia note, supra, and Note, The Indigent's Right to Counsel in Civil Cases, 76 Yale L.J. 545 (1967). This right to counsel in civil cases can be based, as the writers have pointed out, on either the Due Process clause following the reasoning of *Gideon,* or on the Equal Protection clause following that of Douglas v. People of State of California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), and Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). See the Columbia note, supra, at 1329–1334 and the Yale note, supra, at 547–551. Whichever line of reasoning is followed, such right to appointed counsel should not be absolute. Cf. the Columbia note at 1338 and the Yale note at 559–562, both dealing with conventional civil litigation. One element to be considered in determining whether the right to appointed counsel exists in a given civil case is the merits of the indigent's claim. Compare the procedure in federal habeas corpus where counsel need not be appointed to pursue a frivolous claim, United States ex rel. Wissenfeld v. Wilkins, 281 F.2d 707 (2d Cir. 1960); see Terry v. Denno, 254 F.Supp. 909 (S.D. N.Y.1966) (Weinfeld, J.); compare also the procedure under 28 U.S.C.A. § 1915 (d) providing for appointment of counsel in civil cases in the federal courts, and particularly such cases as Muhammad v. McGinnis, 362 F.2d 587 (2d Cir. 1966); United States ex rel. Gardner v. Madden, 352 F.2d 792 (9th Cir. 1965); Miller v. Miller, 296 F.2d 283 (2d Cir. 1961); Rhodes v. Houston, 258 F.Supp. 546, 579 (D.Neb.1966); and Jefferson v. Heinze, 201 F.Supp. 606 (N.D.Cal.1962).

The Court's investigation of the merits of petitioner's challenge of his extradition leads it to conclude that there was no Constitutional violation in refusing to appoint counsel, since petitioner's state action did not appear to have any hope of success. Compare Cohen v. Warden, Montgomery Co. Deten. Ctr., 252 F.Supp. 666 (D.Md.1966), a case similar to the instant one. It is the well settled law that:

"The only questions that may be considered [in such an action] relate to

the validity of the arrest and detention by the authorities of the asylum state for extradition purposes: (1) whether a crime * * * has been charged in the demanding state; (2) whether the fugitive in custody is the person named in the warrant of extradition; and (3) whether the fugitive was in the demanding state at the time the alleged crime was committed."

United States v. States of New York and Alabama, supra, 229 F.Supp. at 698 (footnote omitted); United States ex rel. Tucker v. Donovan, 321 F.2d 114 (2d Cir. 1963); Johnson v. Matthews, 86 U.S. App.D.C. 376, 182 F.2d 677, cert. denied, 340 U.S. 828, 71 S.Ct. 65, 95 L.Ed. 608 (1950).* The many sound reasons set out in support of this position in Johnson v. Matthews, supra, make it clear that even with counsel petitioner could not expect successfully to change the law. Since petitioner was not challenging his detention on any of the permissible grounds, it appears that even assuming a right to counsel in such an action under some circumstance, appointment could properly be denied here.

However, since appointment was originally denied on the ground that petitioner had failed to make a sufficient showing of indigency and since the state has supported the denial before us on that ground, the Court feels it appropriate to state its views on this question. According to the petitioner his predicament was as follows: After his release from prison in August 1966 he became employed on September 1, 1966, at a salary of $125 a week. At the time of making the affidavit he earned $150 a week. He alleges that $30 of this sum was taken for "taxes, social security and etcetera"; that his union dues were $6 a month; that he had outstanding medical bills of $200 and dental bills of $1,200. In his petition for rehearing he stated that he owed his attorney $250 for the earlier conduct of this action; and that he had had conversations with six attorneys concerning his appeal, four of whom each asked for a retainer of $400, while two demanded a retainer of $500. Petitioner, although single, asserts he could not afford such fees.

There have been few cases considering the question of what showing of indigency is required to obtain appointed counsel and they shed little light on the standards to be applied. See State v. DeJoseph, 3 Conn.Cir. 624, 222 A.2d 752, cert. denied, 385 U.S. 982, 87 S.Ct. 526, 17 L.Ed.2d 443 (1966); State v. Rutherford, 63 Wash.2d 949, 389 P.2d 895 (1964), appeal dismissed and cert. denied, 384 U.S. 267, 86 S.Ct. 1477, 16 L.Ed.2d 525 (1966). However, much has been written recently about appointment and it is clear that the authors do not feel that a man should be penniless before he can have appointed counsel or free legal services. See Note, Neighborhood Law Offices, 80 Harv.L.Rev. 805, 846–848 (1967); Note, Adequate Representation for Defendants in Federal Criminal Cases: Appointment of Counsel Under the Criminal Justice Act of 1964, 41 N.Y.U.L.Rev. 758, 770–773 (1966); Pye, The Role of Legal Services in the Anti Poverty Program, 31 Law & C. Prob. 211, 216–217 (1966); Moore, The Right to Counsel for Indigents in Oregon, 44 Oregon L.Rev. 255, 263–264 (1965); Carter & Hauser, The Criminal Justice Act of 1964 (When is a defendant "financially unable to obtain counsel . . . ?)", 36 F.R.D. 67 (1964). Cf. Note, The Representation of Indigent Criminal Defendants in the Federal District Courts, 76 Harv.L.Rev. 579, 588 (1963).

■■ Looking at the totality of petitioner's circumstances one notes that he

---

* The New York cases are consistently in accord with this view of the law. People ex rel. Reid v. Ruthazer, 4 A.D.2d 164, 163 N.Y.S.2d 716 (1st Dept. 1957), affd., 5 N.Y.2d 889, 182 N.Y.S.2d 833, 156 N.E. 2d 461 (1959); People ex rel. Scarlett v. Taylor, 20 A.D.2d 152, 245 N.Y.S.2d 498 (3d Dept. 1963); People ex rel.

Shurburt v. Noble, 4 A.D.2d 649, 169 N.Y.S.2d 181 (1st Dept. 1957); People ex rel. Dickie v. Nenna, 51 Misc.2d 343, 273 N.Y.S.2d 253 (Sup.Ct.N.Y.County 1966); In re Holloway, 46 Misc.2d 773, 260 N.Y.S.2d 980 (Sup.Ct.N.Y.County 1965).

has no assets while he does have substantial debts. Viewed realistically, the chances are strong that he will have his employment interrupted at least by a trial in New Jersey. Thus it is not surprising that the several counsel he consulted demanded a substantial retainer. It appears to this Court that when an individual has made a diligent search for counsel to take his case and when he does not have funds available to pay the retainer that is demanded, petitioner's circumstances would entitle him to appointment of counsel to prosecute a meritorious petition, despite the fact that his income may be sufficient to keep him from living in utter poverty. However, since appointment of counsel could properly be refused for the reason that his claim was completely lacking in merit, this petition must be denied.

So ordered.