[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-12570
Non-Argument Calendar

_____

D.C. Docket No. 5:14-cv-00096-RH-GRJ

VERSIAH TAYLOR,

Plaintiff-Appellant,

versus

CHRISTOPHER PEKEROL,
IRS-CI Agent, et al.,

Defendants,

UNITED STATES OF AMERICA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(January 7, 2019)

Before MARCUS, MARTIN and NEWSOM, Circuit Judges.

PER CURIAM:

Versiah Taylor, a federal prisoner proceeding pro se, appeals: (1) the denial of his motions for appointed counsel; (2) the partial dismissal of his third amended complaint, which raised Fourth, Fifth, and Eighth Amendment Bivens[1] claims, unlawful disclosure claims under 26 U.S.C. § 7431, and conspiracy claims under 42 U.S.C. § 1985 against the United States, Internal Revenue Service ("IRS") agents Christopher Pekerol and Margaret Weiss, and United States Marshall Glenn Miller; and (3) the grant of summary judgment on his surviving unlawful disclosure claims. His case stems from an IRS investigation into his three businesses. During the course of the investigation, Taylor was arrested by state officials for cocaine possession and released on bond. Thereafter, Taylor was arrested by federal officials, remained in federal custody pretrial and throughout his trial, and ultimately, was found guilty by a jury of filing false tax returns, theft of government property, and identity theft.

On appeal, Taylor argues that the district court: (1) abused its discretion in denying his motions to appoint counsel and in not telling him the denials were immediately appealable; (2) erred in dismissing his Bivens and § 1985 claims because the defendants were not entitled to qualified immunity on his constitutional claims, and he sufficiently pled his § 1985 claim; (3) erred in

---

[1] Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

2

granting summary judgment before addressing a pending discovery motion; and (4) violated his right to a jury trial.  After careful review, we affirm.

I.

First, we reject Taylor's claim that the district court abused its discretion in handling his motion to appoint counsel.  We  review a district court's decision not to appoint counsel for abuse of discretion.  Smith v. Sch. Bd. of Orange Cty., 487 F.3d 1361, 1365 (11th Cir. 2007).  "A district court abuses its direction if it applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous."  Citizens for Police Accountability Political Comm. v. Browning, 572 F.3d 1213, 1216-17 (11th Cir. 2009).  The denial of a motion for appointment of counsel is not immediately appealable.  See Holt v. Ford, 862 F.2d 850, 851-54 (11th Cir. 1989) (en banc) (§ 1983 case).

Under the Federal Rules of Civil Procedure, a party may file objections to a magistrate judge's ruling on nondispositive matters within 14 days of being served with the order.  Fed. R. Civ. P. 72(a).  A pro se litigant's failure to timely challenge a magistrate judge's nondispositive order in the district court waives the right to appeal the order.  Smith, 487 F.3d at 1365; Farrow v. West, 320 F.3d 1235, 1248 n.21 (11th Cir. 2003).  A pro se prisoner's court filings are deemed filed on the date they were delivered to prison authorities for mailing and are assumed to have

3

been delivered on the date of signing, absent evidence to the contrary.  Daker v. Comm'r, Ga. Dep't of Corrs., 820 F.3d 1278, 1286 (11th Cir. 2016).

"A plaintiff in a civil case has no constitutional right to counsel."  Bass v. Perrin, 170 F.3d 1312, 1320 (11th Cir. 1999).  However, a district court may request, but not require, that an attorney represent an indigent plaintiff.  28 U.S.C. § 1915(e)(1); see Mallard v. U.S. Dist. Court for S. Dist. of Iowa, 490 U.S. 296, 310 (1989) (holding that the statute does not authorize "coercive appointments of counsel").  The court has broad discretion in deciding to appoint counsel and should do so only in "exceptional circumstances," where the facts and legal issues are so complex that the assistance of counsel is required.  Bass, 170 F.3d at 1320; Kilgo v. Ricks, 983 F.2d 189, 193 (11th Cir. 1993).

For starters, Taylor failed to timely object to the magistrate judge's denial of his motion to appoint counsel, thus waiving the right to appeal from it.  See Smith, 487 F.3d at 1365; Farrow, 320 F.3d at 1248 n.21.  But even if the denial of his application for a lawyer were properly before us, we would conclude that the district court did not abuse its discretion in holding that it lacked authority to compel any lawyer to represent Taylor.  The Supreme Court held in Mallard that district courts have no authority to compel a lawyer under 28 U.S.C. § 1915 to represent a party in a civil case, and there is no binding precedent that a district court has the inherent power to do so.  See 28 U.S.C. § 1915(e)(1); Mallard, 490

4

U.S. at 310; Citizens for Police Accountability, 572 F.3d at 1216-17. Moreover, the denial of counsel was not an immediately appealable order. See Holt, 862 F.2d at 851-54.

## II.

Next, we disagree with Taylor that the district court erroneously dismissed his Bivens and § 1985 claims against Miller, Pekerol, and Weiss. Typically, we review de novo the grant of a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Chaparro v. Carnival Corp., 693 F.3d 1333, 1335 (11th Cir. 2012). But, if a party, after being notified of the time to file objections and the consequences of failing to do so, fails to properly object to a magistrate judge's Report and Recommendation ("R&R"), he "waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1. This means that "the party may not challenge them on appeal in the absence of plain error or manifest injustice." Resolution Trust Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

While we read briefs filed by pro se litigants liberally, issues not briefed on appeal are deemed abandoned. Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008). An appellant abandons a claim when he makes only passing references to it, or raises it in a perfunctory manner without supporting arguments and authority. Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 681 (11th Cir. 2014). In

addition, we usually will not consider issues that were not raised in the district court.  Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1331-32 (11th Cir. 2004).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged.  Id.  While district courts should construe pro se complaints liberally, Powell v. Lennon, 914 F.2d 1459, 1463 (11th Cir. 2007), conclusory allegations, unwarranted deductions of facts, or legal conclusions masquerading as facts will not prevent dismissal.  Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002).

Government officials may avoid liability under the doctrine of qualified immunity.  Alcocer v. Mills, 906 F.3d 944, 950-51 (11th Cir. 2018).  To receive qualified immunity, officials first must establish that they were acting within the scope of their discretionary authority.  Id. at 951.  If they do so, the burden shifts to the plaintiff to show that the officials were not entitled to qualified immunity both: (1) because they violated a constitutional right, and (2) because the violation was clearly established.  Id.

The Supreme Court held in <u>Bivens</u> that there exists an implied private right of action for damages against federal officers for violating a citizen's constitutional rights. <u>Corr. Servs. Corp. v. Malesko</u>, 534 U.S. 61, 66 (2001). The violation must, however, be the proximate cause of damages. <u>Dean v. Gladney</u>, 621 F.2d 1331, 1335 (5th Cir. 1980).[2] Because claims arising under 42 U.S.C. § 1983 and <u>Bivens</u> are similar, we generally apply § 1983 law to <u>Bivens</u> cases. <u>Abella v. Rubino</u>, 63 F.3d 1063, 1065 (11th Cir. 1995). To establish a claim for conspiracy to violate constitutional rights under 42 U.S.C. § 1983, the plaintiff must show the existence of a conspiracy that actually deprived him of a specific constitutional right. <u>Grider v. City of Auburn, Ala.</u>, 618 F.3d 1240, 1260 (11th Cir. 2010).

Section 1985 provides a way to redress conspiracies to violate civil rights. 42 U.S.C. § 1985; <u>Farese v. Scherer</u>, 342 F.3d 1223, 1230 (11th Cir. 2003). Section 1985(3) creates a cause of action for conspiracies that deprive any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws. 42 U.S.C. § 1985(3). To state a § 1985(3) claim, a plaintiff must allege facts showing "(1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured in

---

[2] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981.

his person or property of any right or privilege of a citizen of the United States." Childree v. UAP/GA CHEM, Inc., 92 F.3d 1140, 1146-47 (11th Cir. 1996). To establish the second element, a plaintiff must show "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Id. at 1247 (quotation omitted). Qualified immunity is not available as a defense to a 42 U.S.C. § 1985(3) claim. Johnson v. City of Fort Lauderdale, Fla., 126 F.3d 1372, 1379 (11th Cir. 1997).

The Fourth Amendment protects against unreasonable searches and seizures, requiring that warrants be supported by probable cause and particularly describe the area to be searched, and the persons or things to be seized. U.S. Const. amend. IV. Warrant applications must contain sufficient information to establish probable cause. Holmes v. Kucynda, 321 F.3d 1069, 1083 (11th Cir. 2003). Probable cause to search is founded on a "fair probability that contraband or evidence of a crime will be found in a particular place." Feliciano v. City of Miami Beach, 707 F.3d 1244, 1251 (11th Cir. 2013) (quotation omitted). If an officer obtains a warrant by making false statements intentionally and recklessly in an application, the Fourth Amendment is violated and he lacks qualified immunity. Franks v. Delaware, 438 U.S. 154, 154-56 (1978); Holmes, 321 F.3d at 1083. Regardless of the officer's liability, however, a warrant will be valid if the false statements were immaterial to the existence of probable cause. Madiwale v. Savaiko, 117 F.3d 1321, 1326 (11th

8

Cir. 1997). While the scope of a search pursuant to a search warrant is governed by its terms, a search may be as extensive as necessary to locate the items specified in the warrant, so long as it is reasonable in light of the totality of the circumstances. United States v. Waugneux, 683 F.2d 1343, 1352 (11th Cir. 1982).

The Due Process Clause of the Fifth Amendment protects against deprivations of "life liberty, or property, without due process of law." U.S. Const. amend. V. A criminal defendant must be released before trial on personal recognizance or upon execution of an unsecured bond, unless the court determines that release will not reasonably ensure his appearance or will endanger the safety of others. 18 U.S.C. § 3142(b). When there is a serious risk of flight or obstruction of justice, the court, on its own or upon a motion by the government, must hold a detention hearing to determine whether any conditions will reasonably assure the defendant's appearance and the safety of the others. Id. § 3142(f)(2). If after the hearing the court determines that no condition or combination of conditions will suffice, it shall order that the defendant be placed in pretrial detention. Id. § 3142(e).

The Interstate Agreement on Detainers ("IAD") is an agreement between 48 states, the United States, and the District of Columbia that creates uniform procedures for lodging and executing a detainer. Alabama v. Bozeman, 533 U.S. 146, 148 (2001). "A detainer is a request filed by a criminal justice agency with

9

the institution in which a prisoner is incarcerated, asking the institution either to hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent." Carchman v. Nash, 473 U.S. 716, 719 (1985). Under Article III of the IAD, a person who has "entered upon a term of imprisonment," and against whom a detainer has been lodged regarding pending charges in another state, may request a final disposition on his pending charges. 18 U.S.C. App. 2 § 2 Art. III(a). The officer having custody over the prisoner must then notify all prosecuting officers and courts where the request is being sent. Id. Art. III(b). The prisoner must be brought to trial within 180 days of the notice, otherwise the charges must be dismissed. Id. Art. III(a), (d).

A claim for selective prosecution is analyzed as an equal protection claim brought under the Fifth Amendment's Due Process Clause. See United States v. Armstrong, 517 U.S. 456, 464 (1996); Geaneas v. Willets, 911 F.2d 579, 587 (11th Cir. 1990). An individual claiming that he was subject to selective prosecution must establish both a discriminatory effect and purpose, i.e. that (1) similarly situated individuals were not prosecuted and (2) discriminatory animus was behind the disparate treatment. See United States v. Brantley, 803 F.3d 1265, 1271 (11th Cir. 2015); cf. Strickland v. Alderman, 74 F.3d 260, 264 (11th Cir. 1996) (listing elements of § 1983 claim for selective enforcement of a standing water ordinance).

10

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. It does not guarantee a right to bail, only that whatever bail imposed not be excessive. Campbell v. Johnson, 586 F.3d 835, 842 (11th Cir. 2009). "[T]he test for excessiveness is whether the terms of release are designed to ensure a compelling interest of the government." Id. at 843. The Code of Alabama provides that when a defendant is charged with an offense punishable by less than ten years, "the judge or court must also direct the clerk of court . . . to admit the defendant to bail in a sum which may be prescribed by the court." Ala. Code § 12-22-222(b) (1975). Similarly, Alabama Rule of Criminal Procedure 7.2 gives the court the authority to impose certain conditions of release, including requiring that a defendant post bond, if the court determines that pretrial release will not reasonably assure his appearance or that he poses a real and present danger to others. Ala. R. Crim. P. 7.2(a); see Ala. R. Crim. P. 7.3(b).

Here, because Taylor failed to object to the magistrate judge's R&R recommending the dismissal of his constitutional claims against the IRS agents, we review those claims only for plain error or manifest injustice. See Resolution Trust Corp., 996 F.2d at 1149.[3] Taylor essentially brought two sets of claims against

---

[3] We decline to review Taylor's newly raised issues about whether he stated a claim under the Federal Tort Claims Act, whether there was a speedy trial violation, and whether he stated an excessive detention claim under the Eighth Amendment, since they were not presented to the

them: (1) that the IRS agents conspired with state officials to have him detained; and (2) that the IRS agents conspired to subject African American businesses to unreasonable searches and seizures. The district court's dismissal of those claims was not plainly erroneous nor manifestly unjust.

First, as for his claims concerning his detention by the state, Taylor's § 1985 claims fail because he did not allege that the purpose of the agents' actions was motivated by any discriminatory animus. See 42 U.S.C. § 1985(3); Childree, 92 F.3d at 1147. Nor was it plain error, nor manifestly unjust for the district court to dismiss his Fourth Amendment claim because no binding precedent addresses whether contacting state authorities and asking them to hold a state defendant for questioning constitutes a Fourth Amendment violation. See Resolution Trust Corp., 996 F.2d at 1149. As for his Eighth Amendment excessive bail claim, the complaint does not allege any facts indicating that the IRS agents directly participated in the bail process, by, for example, requesting that bail be imposed or preventing the state court judge from exercising his discretion. Ala. Code § 12-22-222(b) (1975); Ala. R. Crim. P. 7.2; Dean, 621 F.2d at 1335. Since we can find no

---

district court. See Access Now, Inc., 385 F.3d at 1331. In addition, Taylor has not raised in his brief -- and has therefore abandoned -- any issue about the district court's determination that his claims against the United States and his official capacity claims were barred by sovereign immunity, that the individual defendants were acting within their discretionary authority, that he was not entitled to notice of the Turbo Tax subpoena, that the electronic surveillance did not constitute a Fourth Amendment violation, that he failed to state a Fifth Amendment claim in Count 60, and that he failed to state a Fourth Amendment claim against Miller. See Timson, 518 F.3d at 874.

plain error or manifest injustice in the dismissal of his constitutional claims, we can find no plain error or manifest injustice in the agents' entitlement to qualified immunity as to this set of claims.  See Alcocer, 906 F.3d at 951.

As for Taylor's general claims about unreasonable searches and seizures directed at African American businesses, Taylor's conspiracy claims arising under §§ 1983 and 1985 rested upon a legal conclusion, but without any supporting facts suggesting in any way how the agents' actions were discriminatory.  See 42 U.S.C. § 1985(3); Grider, 618 F.3d at 1260; Childree, 92 F.3d at 1147; Oxford Asset Mgmt., Ltd., 297 F.3d at 1188.  Taylor also failed to state a claim for selective prosecution because he did not offer any facts indicating that the law was being enforced differently on account of race.  See Brantley, 803 F.3d at 1271.  As for the Fourth Amendment claims that the agents made a series of misrepresentations in obtaining warrants to search two of Taylor's businesses, the complaint does not indicate that the alleged misrepresentations were made either intentionally or recklessly.  See Franks, 438 U.S. at 154-56; Holmes, 321 F.3d at 1083.

Moreover, Taylor failed to state a Fourth Amendment claim about the execution of the first search warrant.  Because the complaint does not state how the purported representations were essential to establish probable cause or what the scope of the search warrant was, we cannot determine whether the agents abused their discretion in blocking the entrance to his business, questioning clients, and

13

conducting a visual search of his office.  See Savaiko, 117 F.3d at 1326; Waugneux, 683 F.2d at 1352.  As for his Fourth Amendment claim concerning the second search warrant and the seizure of some documents, again he failed to allege how the agents' statements were false or why they were essential to a determination of probable cause.  See Savaiko, 117 F.3d at 1326.[4]  Thus, the magistrate judge did not plainly err nor commit manifest injustice by determining that the IRS agents were entitled to qualified immunity as to this set of claims.

Nor did the district court err in dismissing Taylor's constitutional claims leveled against United States Marshal Miller, which essentially allege that Miller conspired to deprive him of bail in federal district court.  Taylor failed to state a Fifth Amendment claim because his complaint says that he stipulated to a waiver of his federal detention hearing and, therefore, Miller could not be the proximate cause of the denial of pretrial release.  See Gladney, 621 F.2d at 1335.  As for his claim based on the IAD -- which allows a person who has "entered upon a term of imprisonment," and against whom a detainer has been lodged based on pending

[4] As for Taylor's reliance on Boyd v. United States, 116 U.S. 616 (1886), overruled in part by Warden, Md. Penitentiary v. Hayden, 387 U.S. 294 (1967), we are unpersuaded.  In Boyd, the Supreme Court held that the compelled production of documents to be used against the furnisher, whether under a warrant or subpoena, violated the Fourth Amendment and were rendered inadmissible under the Fifth Amendment.  Fisher v. United States, 425 U.S. 391, 407 (1976).  However, the extent of Boyd's expansive interpretation of the Fourth and Fifth Amendments has been narrowed.  See id.  Notably, the Supreme Court has since held that records seized during the execution of a search warrant do not implicate the Fifth Amendment.  Andresen v. Maryland, 427 U.S. 463, 466-67, 471-72, 475-77 (1976).  Thus, Boyd does not apply to Taylor's case, since Taylor was not compelled to produce anything and Boyd does not apply to items seized during the execution of search warrants.  See Fisher, 425 U.S. at 407; Andresen, 427 U.S. at 466-67, 471-72, 475-77.

charges in another state, to request a final disposition on his pending charges, 18 U.S.C. App. 2 § 2 Art. III(a) -- it also fails.  Under the IAD, a detainer is "a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction."  United States v. Mauro, 436 U.S. 340, 359 (1978).  Notably, the notice of bond revocation hearing that Taylor received from the state while he was in federal custody did not amount to a "detainer," since he was not serving a term of imprisonment in federal custody, but rather was a pretrial detainee pending trial in both state and federal court.  See 18 U.S.C. App. 2 § 2 Art. III(a); see also United States v. Currier, 836 F.2d 11, 16 (1st Cir. 1987) ("The terms of the [IAD] apply exclusively to prisoners who are actually serving their sentences, and not to pretrial detainees.").

As for his Eighth Amendment claim, Taylor failed to state a claim for excessive bail.  Taylor appears to argue that Miller deprived him of federal bail because the state detainer issue was never resolved before his federal trial and sentencing.  However, Taylor waived his right to a detention hearing in federal court, he failed to challenge his pretrial detention during his federal criminal proceeding, and in any event, Miller had no authority to impose or deny him bail in a criminal proceeding.  Moreover, there is no constitutional right to bail.  See

Campbell, 586 F.3d at 842. Thus, Taylor has failed to allege that Miller deprived him of any Eighth Amendment right.

Finally, Taylor did not adequately state a claim for conspiracy against Miller under either §§ 1985(3) or 1983. As for the § 1985 claim, Taylor failed to allege that the conspiracy was motivated by some discriminatory animus, and, as for the § 1983 claim, he failed to show that he was actually deprived of a constitutional right as a result of any conspiracy. See 42 U.S.C. § 1985(3); Grider, 618 F.3d at 1260; Childree, 92 F.3d at 1147.

### III.

We also find no merit to Taylor's claim that the district court erred in granting summary judgment before addressing a pending discovery motion. We review a district court order granting summary judgment de novo, viewing "the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmoving party." Battle v. Bd. of Regents., 468 F.3d 755, 759 (11th Cir. 2006). A district court may grant summary judgment if the movant establishes that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Shaw v. City of Selma, 884 F.3d 1093, 1098 (11th Cir. 2018). However, summary judgment is not appropriate where the nonmoving party has been unable to obtain responses to discovery requests. Fernandez v. Bankers Nat'l Life Ins. Co., 906 F.2d 559, 570 (11th Cir. 1990). Where the

16

discovery sought is necessary to obtain facts in order to oppose the motion for summary judgment, a district court's failure to rule on a pending discovery motion may constitute reversible error. See id. at 571 (holding that the district court erred by not ruling on plaintiff's motion to compel before granting summary judgment).

Here, however, the district court did not err by "prematurely" granting summary judgment because there was no pending discovery motion. Taylor's discovery motion had been denied before the district court had granted summary judgment, therefore, and all that was pending at that time was his motion for reconsideration of the denial of that motion. Moreover, Taylor's motion for reconsideration was addressed contemporaneously with the defendant's motion for summary judgment.

IV.

Finally, we are unpersuaded by Taylor's claim that the district court violated his right to trial by jury. It is, of course, true that the Seventh Amendment preserves the right to a jury trial in civil cases. U.S. Const. amend. VII. However, the Federal Rules of Civil Procedure authorize the dismissal of a plaintiff's case for failure to state a claim before trial. Fed. R. Civ. P. 12(b)(6). Indeed, we've expressly held that a district court's dismissal of a case based on a matter of law before trial does not violate the Seventh Amendment. See Garvie v. City of Fort Walton Beach, Fla., 366 F.3d 1186, 1190 (11th Cir. 2004) (holding that the grant

17

of summary judgment did not violate the Seventh Amendment). And the Supreme Court has made clear that the entry of "summary judgment does not violate the Seventh Amendment." Jefferson v. Sewon Am., Inc., 891 F.3d 911, 919 (11th Cir. 2018) (citing Parklane Hosiery Co. v. Shore, 439 U.S. 322, 336 (1979)). Here, the district court did not violate Taylor's right to a jury trial by dismissing his complaint in part and granting summary judgment on the remaining claims.

**AFFIRMED**.